IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Marco Specialties, Inc., | ) | |
| | ) | C/A No.: 3:12-cv-1274-JFA |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Legacy Circuit Enterprises, LLC, | ) | |
| f/k/a, Legacy Circuit Upgrades, LLC, | ) | |
| Defendants. | ) | |

This matter comes before the court pursuant to the Plaintiff's motion for a temporary restraining order (ECF No. 4). Because the defendant has now appeared, the court invited oral argument regarding whether or not the court should issue a preliminary injunction. For the reasons discussed below, the court hereby denies the motion for a temporary restraining order/preliminary injunction.

**I.    FACTUAL AND PROCEDURAL HISTORY**

This case arises from a business dispute involving circuit boards for use in pinball machines. Plaintiff, Marco Specialties, Inc., is in the business of selling pinball machines. Following a meeting with Brett Davis at a trade show, Marco entered into an agreement (2007 Agreement) with Defendant, Legacy Circuit Upgrades, LLC, (LCU), providing that LCU would design products that Marco would sell. Marco would then pay a 7% royalty to LCU. The 2007 Agreement contained an exclusivity clause granting

Marco the exclusive right to sell and market "any amusement machine related devices, circuit boards, and inventions developed by LCU."

This case primarily concerns the PinScore product, a circuit board for pinball machines. Macro purchased PinScore products from LCU until it was administratively dissolved in 2010. Marco then received its PinScore products from Legacy Circuit Enterprises, Inc., (LCE), also founded by Davis. In October of 2011, LCE developed a line of products known as "Xpin" products. The parties dispute whether this product is substantially similar to the PinScore products. LCE began to sell Xpin to third parties. LCE claims it is permitted to sell to third parties pursuant to an agreement with Marco to sell such "side projects."

Dealings between Marco and LCE have now frozen, resulting in the present action. Plaintiff filed this action on April 13, 2012, and Defendant removed it to this court on May 15, 2012. The instant motion was filed in state court.

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court. *Real Truth About Obama, Inc., v. Fed. Election Comm'n*, 575 F.3d 342, 345 (*vacated in part on other grounds by Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010)). In order to obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* (citing *Winter v.*

*Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). All four requirements must be satisfied for the injunction to issue. *Id.* (citing *Winter*, 555 U.S. at 22).

## III. DISCUSSION

The court finds that the Plaintiff has failed to satisfy the elements required for an injunction to issue and the court hereby declines to issue a preliminary injunction. First, the Plaintiff has not demonstrated that it will suffer immediate irreparable harm if an injunction is not issued. This case revolves around the sale of circuit boards, and damages can accordingly be calculated in lost sales. These monetary damages would provide an adequate remedy at law and obviate the need for an injunction. Plaintiff maintains that the lost market share could not be adequately calculated, thereby necessitating an injunction. While market share may well prove to be more difficult to calculate than other damages, it does not follow that an injunction is necessary. The present suit was not filed until six months after the defendants began selling Xpin. As a result, this court will have to delve into an analysis of lost profits and lost market share in any event. Because a large portion of the alleged damages has already occurred and because such damages may be quantified monetarily, Plaintiff has failed to demonstrate immediate irreparable harm.

Second, the balance of equities does not tip in Plaintiff's favor. The products at issue constitute only a portion of Plaintiff's business. While the damage is nonetheless real, it does not appear to threaten to undermine Plaintiff's entire business. On the other hand, Defendant has indicated dire consequences should the injunction be granted.

Defendant would be unable to sell the products to anyone,[1] and would no longer receive any revenues. Defendant, however, would remain bound to its contracts with third parties. Defendant informs the court that granting the injunction would likely result in its bankruptcy.

Additionally, Plaintiff has not demonstrated that it is likely to succeed on the merits. Defendant has raised several issues that may result in a verdict in its favor: Defendant argues that the original agreement was modified to allow for the sale of "side projects" such as Xpin, and Defendant asserts that Xpin was a product of a separate legal entity, LCE, that would not be bound to the 2007 Agreement. While the court expresses no view on the resolution of these issues, the presence of these issues indicates that the Defendant has a colorable defense. As a result, the Plaintiff has failed to carry its burden of demonstrating that it is likely to succeed. Finally, Plaintiff has not demonstrated that the public interest would favor this injunction.

Plaintiff has also filed a motion to quash a subpoena. At oral argument it appeared that the subpoena was an attempt to obtain documents relevant to the preliminary injunction hearing. Because the court has now resolved that matter, the court hereby grants the motion to quash. The parties are directed to pursue discovery pursuant to the forthcoming scheduling order.

## IV. CONCLUSION

For the reasons outlined above, the court hereby denies the Defendant's motion for a preliminary injunction. The court, however, is aware that time is of the essence in this

---

[1] Defendant alleges that Plaintiff is refusing to buy any of the products.

matter. At oral argument, the parties indicated that they would be amenable to resolving this matter in a timely fashion. Accordingly, in a separate scheduling order, the court will establish an expedited schedule for this case.

       IT IS SO ORDERED.

May 31, 2012　　　　　　　　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　　　　　United States District Judge